**Eddie Dwayne MUNCY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2008–CA–001814–MR.**

Court of Appeals of Kentucky.

Nov. 20, 2009.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for appellee.

Before NICKELL and VANMETER, Judges; LAMBERT,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Eddie Dwayne Muncy (Muncy) appeals from the final judgment of the Bell Circuit

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Court sentencing him to ten years' imprisonment for two counts of first-degree trafficking in a controlled substance. For the following reasons, we affirm.

Muncy was arrested and charged after a confidential informant (CI), under the supervision of a Detective for the Kentucky State Police (KSP), made two undercover controlled drug buys from him. The CI recorded both transactions on a recorder provided to her by the KSP. The recordings were played at trial and during jury deliberations.

■■ Muncy claims that he was denied due process of law because the trial court permitted the Detective, who testified for the Commonwealth, to assist in replaying portions of the recordings during jury deliberations. Although this issue was not preserved for appeal, we will consider it nonetheless under the substantial error standard of RCr[2] 10.26, which provides:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

■ In *Martin v. Commonwealth,* 207 S.W.3d 1 (Ky.2006), the Kentucky Supreme Court examined RCr 10.26 with an emphasis on the concept of "manifest injustice." The Court explained that "the required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* at 3. Using the case of *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002),[3] as a valuable guide in the application of Kentucky's palpable error rule, the Court held that "[t]o discover manifest injustice, a reviewing court must plumb the depths of the proceeding ... to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Martin,* 207 S.W.3d at 4. In other words, "[w]hen an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id.* at 5.

In this case, Muncy asserts that the Detective's interaction with the jury, while replaying the recording during jury deliberations, constitutes jury tampering. Specifically, Muncy avers that the Detective conversed with the jurors in a jocular manner, was laughing and joking with them, and at one time asked if they wanted the television turned on its side for a better view. Notably, this alleged improper conduct occurred in open court and in the presence of Muncy and his counsel, who did not object at that time. Muncy primarily relies on the case of *Bowling v. Commonwealth,* 168 S.W.3d 2 (Ky.2004), to support his claim.

■ In *Bowling,* the Kentucky Supreme Court addressed whether the jury was ex-

---

2. Kentucky Rules of Criminal Procedure.

3. "In *United States v. Cotton* the Supreme Court analyzed the plain error test of Federal Rule of Criminal Procedure 52(b), the federal counterpart of RCr 10.26 ... but focused primarily on an element from *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), as follows: 'an appellate court may then exercise its discretion to notice a forfeited error but only if ... the error seriously affects the fairness, integrity or public reputation of judicial proceedings.' *Cotton,* 535 U.S. at 631, 122 S.Ct. at 1781; *see also Ernst v. Commonwealth,* 160 S.W.3d 744, 758 (Ky.2005) (properly applying this standard to an evidentiary error under Kentucky Rule of Evidence 103(e))." *Martin,* 207 S.W.3d at 4–5.

posed to improper outside influences and declined to find alleged improper conduct on behalf of the defendant and a defense witness substantially prejudicial so as to warrant a new trial. In that case, the defendant allegedly winked, and smiled in a flirtatious manner, at some of the female jurors and a defense witness allegedly stared at the jury room window in a manner that caused some of the jurors to become uncomfortable. The Court discussed the fact that "[j]urors are often exposed during trial to numerous witnesses and spectators" and "[t]o conclude that a mere unkind look from one of them warrants a new trial could create endless possibilities for frivolous claims, that would wreak havoc upon the finality of judgments." *Bowling,* 168 S.W.3d at 11. Moreover, a defendant can "not obtain relief from any prejudice resulting from his own improper behavior during trial." *Id.*

Muncy relies on the fact that the *Bowling* court cited *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), as the seminal case on inappropriate juror contacts; however, this reliance is not fitting. The *Bowling* court cited the *Remmer* case for the proposition that "any private communication, contact, or tampering directly or indirectly, with a juror during a trial ... is, for obvious reasons, deemed presumptively prejudicial[.]" *Remmer,* 347 U.S. at 229, 74 S.Ct. at 451. In this instance, though, no private communication between the Detective and the jury occurred; rather, the alleged improper communication took place in open court and in the presence of the entire jury, Muncy, and his counsel.[4] We decline to extend the principle in *Remmer* regarding private communication to the situation here.

Simply put, a review of the record does not disclose that the alleged improper in-

teraction between the Detective and the jury was so "manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin,* 207 S.W.3d at 5. To the contrary, the Detective provided assistance to the court by operating the television, as he did during the trial, including inquiring of the jury whether they would like the television turned on its side for a better view. While some laughter did ensue from the perhaps unnatural act of watching the television turned on its side, any communication between the Detective and the jury was not shocking or jurisprudentially intolerable, so as to constitute manifest injustice affecting Muncy's substantial rights.

The judgment of the Bell Circuit Court is affirmed.

ALL CONCUR.

---

4. Muncy concedes that RCr 9.74 is inapplicable here since the alleged improper communi-

cation occurred in open court in the presence of Muncy, his counsel, and the entire jury.