# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 20, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0373-MR

DENARRIUS TERRY                                                     APPELLANT

V.              ON APPEAL FROM LOGAN CIRCUIT COURT
HONORABLE JOE W. HENDRICKS, JR., JUDGE
NO. 20-CR-00257

COMMONWEALTH OF KENTUCKY                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Logan County jury found Denarrius Terry ("Terry") guilty of complicity to first-degree trafficking in a controlled substance, second offense (methamphetamine > two grams); first-degree trafficking in a controlled substance, second offense (cocaine > 4 grams) (firearm enhanced); possession of drug paraphernalia; and possession of a handgun by a convicted felon. The Logan Circuit Court sentenced Terry to twenty years in prison. Terry now appeals as a matter of right and challenges his convictions. Ky. Const. § 110 (2)(b). Having reviewed the record, the arguments of the parties, and the applicable law, we affirm the judgment of the Logan Circuit Court.

# I. BACKGROUND

In August 2020, Central Kentucky Drug Task Force officers acted on information they received and did a "trash pull" on a residence where Terry, his wife, Jennifer Cross ("Cross"), and their children lived. The officers pulled six bags of trash and found several cut straws with suspected drug residue and baggie corners with suspected drug residue in them.

The officers used this evidence to obtain a search warrant for the residence. Both Terry and Cross were present during the execution of the search warrant. In their shared bedroom, the officers found a bag containing baggies with 46 grams of methamphetamine and 42 grams of cocaine. Officers also found numerous empty baggies, scales, and two guns, one with the serial number filed off. In another room, officers found a digital scale, 38 grams of cocaine in a larger bag, and a rolled-up dollar bill. Scattered throughout the residence, officers found marijuana and other drug paraphernalia.

Terry and Cross were arrested and interviewed by law enforcement. Terry admitted he "messed with cocaine" and that the cocaine found in the house was his, but he did not say where he got it. Terry also claimed not to know anything about the methamphetamine or guns.

Cross told officers that she and Terry trafficked drugs together. She said she sold methamphetamine, and Terry sold cocaine. Cross said she often used Terry's money to go purchase the cocaine for him. Cross said they bought three to four ounces of cocaine per week for $1,800 to $2,000 per ounce. She said she bought two ounces of methamphetamine every couple of weeks at $900 per

ounce. Cross said one of the pistols was hers, and the one without the serial number was not hers.

Cross entered a guilty plea to amended drug charges[1] and was sentenced to a total of fourteen years, probated for five years. As part of her plea agreement, she agreed to forfeit her home and other property and testify against Terry.

Terry was indicted by a Logan County grand jury on charges of complicity to first-degree trafficking in a controlled substance, second offense (methamphetamine > two grams); first-degree trafficking in a controlled substance, second offense (cocaine > 4 grams) (firearm enhanced); possession of a defaced firearm and possession of drug paraphernalia. A superseding indictment also charged Terry with possession of a handgun by a convicted felon; and being a second-degree persistent felony offender (PFO 2nd).

Both Cross and Terry testified at trial. The jury acquitted Terry of the defaced firearm charge and found him guilty of all other charges under the original indictment. The circuit court held a separate guilt phase on the charge of possession of a handgun by a convicted felon. The clerk read into the record Terry's prior conviction for possession with intent to traffic cocaine. The jury found Terry guilty of possession of a handgun by a convicted felon. The trial moved into the penalty phase. The circuit court declined to instruct on the

---

[1] Per CourtNet, Logan Circuit Court case 20-CR-00258, Cross pled to first-degree trafficking in a controlled substance, first offense (methamphetamine > two grams); facilitation to first-degree trafficking in a controlled substance, first offense (cocaine > = 4 grams); and possession of marijuana.

PFO 2nd as an impermissible "double enhancement." KRS[2] 532.080 (10). Record (R.) at 181.

Pertinent to this appeal, during the guilt phase, the circuit court instructed the jury on the cocaine trafficking charge with firearm enhancement and the jury found Terry guilty of the cocaine trafficking charge with the firearm enhancement. During the penalty phase, the Commonwealth called Karen Palmer from probation and parole to testify on truth in sentencing. She testified about Terry's prior conviction of possession with intent to traffic cocaine. Though there was no contemporaneous challenge to her testimony, Palmer inaccurately testified that the second offense cocaine trafficking charge was a Class A felony but carried only a 20% parole eligibility. She explained Terry was eligible to obtain good time, meritorious, and work credits.

The jury recommended a sentence of thirty-five years on the cocaine trafficking charge, second offense, with firearm enhancement, with all other sentences to run concurrently. Before entering the final judgment, the circuit court addressed the inaccurate testimony on Class A felony service time. Terry was entitled to 85% parole eligibility instead of 20% as Palmer testified. The Commonwealth believed the error was palpable, and Terry would be entitled to a new penalty phase. Thus, the Commonwealth agreed to a sentence of twenty years, the minimum penalty for a Class A felony, while preserving Terry's right to appeal any pretrial or trial issues. The circuit court accepted the parties'

---

[2] Kentucky Revised Statutes.

4

agreement and sentenced Terry to twenty years in prison. Further facts are developed as needed below. This appeal followed.

## II. ANALYSIS

On appeal, Terry argues the circuit court erred in: (1) improperly instructing the jury on the Class A penalty range for the cocaine trafficking charge, second offense with a firearm enhancement; and (2) denying his motion for a mistrial when the Commonwealth failed to disclose evidence regarding prior investigations.

### A. The trial court correctly enhanced Terry's charge to a Class A felony.

First, Terry argues the circuit court erred in improperly instructing the jury on the Class A penalty range for the enhanced cocaine trafficking charge. Terry argues that the circuit court placed the penalty phase instructions for the firearm enhancement and second offense enhancement in an improper order. He argues that providing the penalty instruction for the firearm-enhanced cocaine trafficking offense before the cocaine trafficking second offense with the firearm enhancement was a palpable error. Terry argues that because the jury did not reach the conclusions in the proper order and the highest maximum sentence for a second trafficking offense is the Class B felony range, the circuit court palpably erred in instructing on the Class A felony range. Terry fails to cite any case law in support of his argument.

Under the guilt phase instructions, the jury found Terry guilty of first-degree cocaine trafficking enhanced by a firearm, which is permissible under our precedent. *See Mills v. Department of Corrections Offender Information*

5

*Services,* 438 S.W.3d 328 (Ky. 2014). While reserving the firearm enhancement to the penalty phase is permissible, there is no prejudice in putting the issue before the jury in the guilt phase, where some connection between the underlying offense and the firearm is necessary.

In the penalty phase instructions, the circuit court instructed on the trafficking charge with the firearm enhancement and then on the second offense enhancement. First, the circuit court instructed the jury to determine Terry's sentence for the first-degree trafficking in cocaine greater than four grams charge with the firearm enhancement. This instruction contained the firearm-enhanced Class B felony penalty range of ten to twenty years, and the jury recommended a sentence of twenty years. On the next page, the court instructed the jury to determine whether this was Terry's second offense of first-degree trafficking in cocaine greater than four grams with the firearm enhancement. This instruction contained the Class A felony penalty range of twenty to fifty years or life in prison. The jury recommended a sentence of thirty-five years.

Terry concedes this argument is unpreserved and requests palpable error review under RCr[3] 10.26. Under RCr 10.26, if an unpreserved error is found to be palpable and affects the defendant's substantial rights, the appellate court may grant appropriate relief if manifest injustice has resulted from the error. An error is palpable when it is "easily perceptible, plain, obvious and readily

---

[3] Kentucky Rules of Criminal Procedure.

noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

Under KRS 218A.1412(1)(a), "A person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in: (a) Four (4) grams or more of cocaine." A first offense is a Class C felony with a penalty range of five to ten years, and a second offense is a Class B felony with a penalty range of ten to twenty years. KRS 218A.1412(3)(a); KRS 532.060(2).

Additionally, KRS 218A.992(1)(a) provides: "any person who is convicted of any violation of this chapter who, at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm, shall: (a) Be penalized one (1) class more severely than provided in the penalty provision pertaining to that offense if it is a felony."

In *Mills*, this Court held:

> "a firearm enhanced drug offense is actually *charged* at the higher level regardless of the procedural circumstances. This reading comports with the common understanding among the bench and bar that such a trafficking offense is charged as an 'enhanced' offense and is classified as a higher level offense at the time of charging. In fact, this Court has in the past equated the firearm enhancement with other statutory enhancements that elevate the classification of an offense, even at the charging level."

7

438 S.W.3d 333-34 (quoting *Jackson v. Commonwealth*, 363 S.W.3d 11, 23-24 (Ky. 2012)).

The combination of the second offense enhancement and firearm enhancement clearly elevated the first-degree cocaine trafficking offense to the Class A penalty level. The only question is whether the order of the penalty phase instructions was proper. Though the order of the instructions may have been confusing, the language of the instructions was proper and followed the sample jury instructions outlined in COOPERS & CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CRIMINAL (2022). So, the question is, did the order of the instructions confuse the jury and lead it to apply the wrong standard or recommend the wrong penalty? Even if the instructions were given out of their proper order, the unpreserved error was not palpable and does not entitle the defendant to relief.

The circuit court did not err in introducing the trafficking in a controlled substance, second offense, until after the firearm enhancement. If the circuit court had reversed the order of the instructions and placed the second offense with the Class B penalty range before the firearm enhancement with the Class A penalty range, the outcome would have been the same.

Terry cannot show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin*, 207 S.W.3d at 3. The circuit court sentenced Terry to twenty years in prison. Twenty years is the maximum penalty for a Class B felony and the minimum penalty for a Class A felony. Thus, the circuit court did not palpably

8

err in the order of the penalty phase instructions, and Terry is not entitled to relief.

## B. The trial court did not abuse its discretion in denying Terry's motion for a mistrial.

Second, Terry argues that the circuit court abused its discretion in denying his motion for a mistrial when the Commonwealth failed to disclose evidence regarding prior investigations. After jury selection and before opening statements, defense counsel approached the bench and moved for a mistrial. Counsel told the circuit court that he just received some information not disclosed in discovery from an officer that would have been useful in trial preparation. Defense counsel claimed an unnamed officer told him that at some point during the investigation of Terry and Cross, a confidential informant (CI) tried to make a drug buy from them. Cross sold the CI drugs, but Terry refused. Defense counsel argued it would have been useful to show that Terry was not selling drugs. Counsel asked the circuit court to declare a mistrial and order the officers to provide him with any information they had about failed drug buys.

The Commonwealth responded that it had also just learned about this, and defense counsel misunderstood what the officer said. The Commonwealth told the court that the officer said that the CI was aware Terry and Cross were drug dealers, but they were not his dealers. The CI once attempted to buy drugs from another person when Cross was present, not that the CI tried to buy from Terry and Cross, but Terry refused. Defense counsel did not challenge the Commonwealth's interpretation of the officer's comments. Rather, defense

9

counsel responded, "Okay." In his brief reply, Terry argues that the tone of "okay" did not come through. The circuit court denied the motion for a mistrial.

We review the denial of a motion for a mistrial under the abuse of discretion standard. *Commonwealth v. Padgett,* 563 S.W.3d 639, 645 (Ky. 2018). It is within the circuit court's discretion to grant or deny a mistrial based on "the circumstances of each individual case." *Id.* at 647. "[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings, and there is a 'manifest necessity for such an action.'" *Id.* at 646 (quoting *Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky. 2004)).

Here, the circuit court's denial of defense counsel's motion for a mistrial was not an abuse of discretion, given the evidence against him. Not only did officers find methamphetamine and cocaine in his shared residence with Cross, but Cross also testified against Terry at trial, admitting she trafficked methamphetamine and Terry sold cocaine.

At best, if defense counsel's representation of the officer's statements was true, the CI might have testified that Terry did not sell drugs to him on one occasion. The defense counsel merely stated that the information would have been helpful but failed to show how this information would have altered his defense theory. Based on our review there was no "manifest necessity" requiring a mistrial. Thus, the circuit court did not abuse its discretion in denying Terry's motion for a mistrial.

10

### III.    CONCLUSION

Based on the foregoing, we affirm the judgment of the Logan Circuit Court.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Sarah D. Dailey
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General