RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1082-MR

JAMES DALE BOYD                                                            APPELLANT

                         APPEAL FROM ADAIR CIRCUIT COURT
v.                       HONORABLE DAVID WILLIAMS, JUDGE
                           ACTION NO. 18-CR-00068

COMMONWEALTH OF KENTUCKY                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND LAMBERT, JUDGES.

KAREM, JUDGE: A circuit court jury convicted James Boyd of marijuana cultivation, trafficking in marijuana, and possession of drug paraphernalia. Boyd appeals the Adair Circuit Court's judgment sentencing him to five years' imprisonment, contending that the trial court improperly instructed the jury, resulting in a double jeopardy violation, and that his rights under the Confrontation Clause were violated.

        Upon review of the record, we affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 13, 2018, an Adair County grand jury indicted Boyd for cultivating marijuana (five plants or more, first offense), trafficking marijuana (five pounds or more, first offense), and possessing drug paraphernalia. The trial court held a two-day jury trial in June 2023.

The evidence at trial indicated that, at some point, law enforcement received information about the cultivation of possible marijuana on Hadley Church Road. On October 15, 2017, Officer Josh Brockman went to that area and drove past Boyd's residence numerous times. Officer Brockman testified that each time he drove past the residence, he smelled marijuana. Subsequent drone images showed marijuana growing near Boyd's house.

Thereafter, Officer Brockman obtained a search warrant and returned to Boyd's residence. During the warrant's execution, the officers found a large amount of marijuana in Boyd's house, yard, garage, and barn. For instance, police discovered eighteen (18) rooted plants growing outside Boyd's residence and one hundred and seventy-one (171) plants growing inside his garage. Additionally, officers discovered evidence that thirteen plant stalks had been harvested, and there were ten (10) additional holes where officers believed plants had been removed. Moreover, law enforcement discovered what the Commonwealth estimated was over ten (10) pounds of processed marijuana in Ziploc bags inside Boyd's house.

During Boyd's conversation with the police after their discoveries, Officer Brockman testified that Boyd told him that it was his marijuana but that the entire amount was for personal use. At the time, Boyd did not claim that the plants recovered were anything other than marijuana. Law enforcement subsequently took the plant material seized from Boyd's property to the state police forensic laboratory for testing, and it was ultimately found to contain marijuana.

Boyd testified at trial that everything recovered was for his personal use and not to sell or share. Additionally, Boyd refused in his testimony to acknowledge that the confiscated plants were marijuana.

After hearing the guilt-phase evidence, the jury convicted Boyd on all counts. Following the sentencing phase proof, the jury recommended that he serve one year in prison for cultivating marijuana and five years for trafficking marijuana. However, the jury recommended no punishment for his drug paraphernalia conviction. Finally, the jury recommended that his sentence be served concurrently for a total of five years' imprisonment.

The trial court ultimately entered a judgment consistent with the jury's recommendations, although it imposed a fine of $1.00 and a sentence of one (1) day in jail for the drug paraphernalia conviction. This appeal followed.

We will discuss additional facts as needed for our analysis.

## ANALYSIS

### a. Jury Instructions

Boyd first contends the trial court erred by improperly instructing the jury, resulting in a double-jeopardy violation. Specifically, Boyd asserts that the trafficking and cultivation jury instructions created the possibility that the jury convicted Boyd for the same act by referencing the same quantity of marijuana. Alternatively, the Commonwealth argues that Boyd invited the error, as the trial court ultimately used substantively identical instructions as those proposed by Boyd.

We agree with the Commonwealth that we may not reach the merits of this claim because Boyd invited the error he now claims. Invited errors arise from "invitations that reflect the party's knowing relinquishment of a right[.]" *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011) (citation omitted). As the Kentucky Supreme Court discussed in *Quisenberry*, "[g]enerally, a party is estopped from asserting an invited error on appeal." *Id*. at 37 (citation omitted).

For example, by requesting facilitation instructions, the defendant in *Quisenberry* waived any claims on appeal that insufficient evidence of facilitation existed.[1] *Id*. at 37-38. *See also Rudd v. Commonwealth*, 584 S.W.3d 742, 746

---

[1] In this case, Boyd made no argument on appeal that the trial court erred in failing to grant his directed verdict motion or that insufficient evidence existed of marijuana trafficking or cultivation. As the Kentucky Supreme Court has stated, "[a]rguments not pursued on appeal are

(Ky. 2019) (finding invited error and waiver because defendant proposed jury instructions substantially similar to that given by trial court); *Webster v. Commonwealth*, 438 S.W.3d 321, 324 (Ky. 2014) (when a party tenders an instruction that is substantially similar to those ultimately given by the trial judge the issue of the giving of the instruction is not eligible for appellate review); *Thornton v. Commonwealth*, 421 S.W.3d 372, 376-77 (Ky. 2013); and *Graves v. Commonwealth*, 384 S.W.3d 144, 152 (Ky. 2012).

In this case, the jury instructions Boyd tendered to the trial court discloses that they are substantively identical to the instructions given by the trial court. Thus, Boyd invited the alleged double jeopardy error, and we may not address that issue on appeal.

### b. Confrontation Clause

Boyd next argues that the trial court erred by allowing the Commonwealth to introduce a report from the state crime laboratory without live testimony from its author. He further argues that this error ran afoul of the Confrontation Clause of the United States Constitution – as applicable to the states through the Fourteenth Amendment – and under Section 11 of the Kentucky Constitution.

---

deemed waived." *Garland v. Commonwealth*, 458 S.W.3d 781, 785 (Ky. 2015) (citations omitted).

A careful review of the record reveals that Allison Standifer ("Standifer"), a supervisor at the Kentucky State Police forensic laboratory, was called to the stand. She explained to the jury her responsibility performing peer reviews of analyst reports. Specifically, when a report is complete Standifer explained she looks over the findings and signs off on it, making it final. One such report was authored by analyst Christopher Ramsey who analyzed the evidence in the case *sub judice*. As the prosecutor began questioning Standifer as to the specifics of the report, defense counsel objected. The attorneys were instructed to approach the bench for a sidebar discussion. It is at this point that the record becomes inaudible. The trial judge failed to use the "white noise"[2] and, instead, all parties whispered. As a result, one cannot hear the substance of the objection, the ensuing discussion, or the ruling by the judge. RAP[3] 25 governs unavailable or omitted proceedings:

> (A)(1) Narrative Statement.
>
> In the event no official record of the . . . trial was made or, if made, is not clearly understandable from the recording, the appellant may prepare a narrative statement of the evidence or proceedings from the best available means, including appellant's recollection, for use as a supplement to[,] or in lieu of [,] an insufficient official record. This statement shall be served on all opposing counsel who participated below who may serve

---

[2] A judge has the ability to create a static noise making conversations at the bench, spoken at normal levels, inaudible to the jury but still recorded on the record.

[3] Rules of Appellate Procedure.

> objections or proposed amendments to the trial court within 10 days after service. Both parties may attach affidavits or other documents to support their statements, objections, or proposed amendment . . . .
>
> (B) Effect of Omitted Record.
>
> The appellate court shall not consider any claim or contention which is based upon a portion of the record below that has not been made part of the record before the appellate court . . . .

Both parties, in their briefs, state that Boyd objected to Standifer's testimony, and that the objection was sustained. Further, Boyd acknowledges he then agreed that Standifer could testify that she reviewed the report. Unfortunately, this recollection of the record does not comport with the Rules of Appellate Procedure. Therefore, as mandated by RAP 25(B), this court will not consider any claim or contention which is based upon the inaudible sidebar. Notably, however, Boyd is not appealing any ruling regarding Standifer's testimony. Boyd's appeal is limited in scope to the admission of the report into evidence.

Following the discussion at the bench, Standifer remained on the stand and went on to testify as to the information contained in the report. The Commonwealth then admitted the report into evidence without objection.

Boyd now argues the trial court ran afoul of the Confrontation Clause by admitting the report into evidence without testimony of its author, although no such objection was made at trial. Therefore, Boyd has requested we review his

claim under the "palpable error" standard. Under Kentucky Rule of Criminal Procedure ("RCr") 10.26, "[a] palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." A party claiming palpable error must show a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

In this case, we conclude that any error in the trial court's handling of the report did not rise to the level of palpable error. Regarding identifying the substance, Officer Brock testified that it was marijuana, a plant he had been trained to recognize as a police officer and based on his involvement in hundreds of marijuana cases. Kentucky courts have allowed law enforcement to testify about matters based on their training and experience. *See, e.g.*, *Brown v. Commonwealth*, 416 S.W.3d 302, 310 (Ky. 2013) (collecting cases).

Moreover, Boyd presented no evidence that he was licensed to grow hemp legally. Under Kentucky law:

> While the level of THC distinguishes marijuana plants
> from hemp plants under federal and Kentucky law, that
> distinction is only relevant if [Boyd] could legally
> possess industrial hemp. Under Kentucky law, he could
> do so only if properly licensed and engaged in growing

> hemp or possessing hemp for industrial use. No such
> evidence was presented.

*Lundy v. Commonwealth*, 511 S.W.3d 398, 406-07 (Ky. App. 2017). Additionally, the Commonwealth provided video evidence revealing the large amount of marijuana seized from Boyd's home. But, significantly, Standifer's testimony included an overview of the report Boyd now claims was admitted in error. As opined above, this court will not review any claim or contention regarding the inaudible sidebar. And, Boyd is not appealing Standifer's testimony, only the admission of the report itself. The jury heard Standifer read all the findings in the report. Even if the jury had been prevented from accessing the physical report, the tests of the substances in question and the author's conclusions were admitted as parol evidence. Any error created by the admission of the physical report was therefore inconsequential. We can discern no manifest injustice.

## CONCLUSION

For the foregoing reasons, we affirm the trial court.

ALL CONCUR.

-9-

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky